UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                         :
MICHAEL DUKE REEVES, DREAMDUKE  :
ENTERPRISE, LLC,                             :
                                                         :
                                       Plaintiffs,   :          19-CV-10210 (VSB)
                                                         :
                     - against -                              :          **OPINION & ORDER**
                                                         :
SAFEGUARD PROPERTIES                    :
MANAGEMENT, LLC, et al.,                 :
                                                         :
                                       Defendants.   :
                                                         :
------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __6/10/2021__

Appearances:

Michael Duke Reeves
Bronx, NY
*Pro se Plaintiff*

Diane Beckman Carvell
Rawle & Henderson, LLP
New York, NY
*Counsel for Defendants Safeguard Properties, Management, LLC, Robert Klein, Alan Jaffa, Tim Rath, Bank of America, N.A., Wells Fargo Bank, N.A., and U.S. Bank National Association*

Edwin Francis Chociey, Jr.
Riker Danzig Scherer Hyland & Perretti LLP
Morristown, NJ
*Counsel for Defendant Sue Barone*

VERNON S. BRODERICK, United States District Judge:

        On October 31, 2019, pro se Plaintiff Michael Duke Reeves ("Reeves") and Dreamduke Enterprise, LLC ("Dreamduke") filed this action against Defendants Safeguard Properties Management, LLC ("Safeguard"), Robert Klein ("Klein"), Alan Jaffa ("Jaffa"), Tim Rath ("Rath"), Bank of America, The Bank of New York, Wells Fargo, Caliber Home Loans, Sue

Barone ("Barone"), U.S. Bank Trust, and Bank of New York Mellon Corporation.  (Doc. 2.)[1] Plaintiffs allege that Dreamduke entered into a contract with Safeguard to provide property preservation services to foreclosed properties in New York and New Jersey, and that Safeguard failed to adequately pay Dreamduke for its services.  (Doc. 2, at ¶¶ 19, 32, 40, 41, 54; *see also* Doc. 4-1, at 67–79.)  Before me is Plaintiff Reeves's motion for reconsideration of my dismissal of this action.

Because Plaintiff Reeves has not raised any basis for finding that his case should not be dismissed for lack of legal representation of Dreamduke, or stayed in favor or arbitration, I find no basis for reconsideration of my order.  Plaintiff Reeves's motion is accordingly DENIED.

## I.    **Procedural History**

On June 23, 2020, I issued an Order directing Plaintiffs no later than July 10, 2020, to "submit a letter of no more than three (3) pages, supported by legal authority, demonstrating good cause as to why this case should not be dismissed pursuant to Federal Rule of Civil Procedure 4(m)." (Doc. 7.)  On August 18, 2020, as Plaintiffs had not responded to my Order, I dismissed this action due to Plaintiffs' failure to prosecute this case.  (Doc. 13.)  On December 18, 2020, Plaintiff Reeves filed the instant motion for reconsideration requesting that I reopen the case. (Doc. 15.)  On January 4, 2021, Defendants Safeguard, Klein, Jaffa, Rath, Bank of America, Wells Fargo Bank, and U.S. Bank National Association filed a joint opposition to Plaintiff Reeves's motion.  (Doc. 18.)  Defendant Barone filed an opposition to Plaintiff Reeves's motion on the same day.  (Docs. 19–20.)

---

[1] Plaintiffs also filed an "Evidentiary Submission in Support of Civil Complaint against Safeguard Properties Management, LLC," which I construe to be an addendum to the Complaint. (Doc. 4.)  Included in this supplementary submission is Dreamduke's certificate of incorporation, which reveals that it is a limited liability company formed by Plaintiff Reeves, (Doc. 4-1, at 1–3), and a document from the Ohio Secretary of State listing Safeguard as a "foreign limited liability company" with a registered agent, Corporation Service Company, located in Columbus, Ohio, (*id*. at 6).

2

On January 5, 2021, I issued an Order directing Plaintiff Reeves to "submit a letter demonstrating why this case should not be dismissed in favor of arbitration, or due to lack of legal representation for Plaintiff Safeguard." (Doc. 21, at 5.) I noted in my Order that "Plaintiff Reeves should state in this letter whether and by which date he intends to seek counsel to represent Dreamduke" and admonished that if Plaintiff failed to do so, "I may stay this action in favor of arbitration and/or dismiss the case for failure to comply with this order pursuant to Federal Rule of Civil Procedure 41(b)." (*Id.*) On January 12, 2021, Plaintiff Reeves submitted a letter responding to my Order to Show Cause. (Doc. 22.) On January 20, 2021, Defendants Safeguard, Klein, Jaffa, and Rath filed their response to Plaintiff's letter, and on the same day Defendant Barone filed her response. (Docs. 23, 24.) Plaintiff Reeves filed a reply to Defendant Barone's letter on January 20, 2021. (Doc. 25.)

## II.     Legal Standard

Local Civil Rule 6.3 allows reconsideration or reargument of a court's order in certain limited circumstances.[2] The standard for reconsideration "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). A motion for reconsideration is "neither an occasion for repeating old arguments previously rejected nor an opportunity for making new arguments that could have been previously advanced." *Associated Press v. U.S. Dep't of Def.*, 395 F. Supp. 2d 17, 19 (S.D.N.Y. 2005). Nor is a motion for reconsideration a time to "advance new facts, issues or arguments not previously

---

[2] Local Rule 6.3 provides that "[u]nless otherwise provided by the Court or by statute or rule (such as Fed. R. Civ. P. 50, 52, and 59), a notice of motion for reconsideration or reargument of a court order determining a motion shall be served within fourteen (14) days after the entry of the Court's determination of the original motion, or in the case of a court order resulting in a judgment, within fourteen (14) days after the entry of the judgment."

presented to the Court." *Polsby v. St. Martin's Press, Inc.*, No. 97 Civ. 690(MBM), 2000 WL 98057, at *1 (S.D.N.Y. Jan. 18, 2000) (internal quotation marks omitted).

The decision of whether to grant or deny a motion for reconsideration is "within 'the sound discretion of the district court.'" *Premium Sports Inc. v. Connell*, No. 10 Civ. 3753(KBF), 2012 WL 2878085, at *1 (S.D.N.Y. July 11, 2012) (quoting *Aczel v. Labonia*, 584 F.3d 52, 61 (2d Cir. 2009)).  Generally, a party seeking reconsideration must show either "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *In re Beacon Assocs. Litig.*, 818 F. Supp. 2d 697, 702–03 (S.D.N.Y. 2011) (quoting *Catskill Dev., L.L.C. v. Park Place Entm't Corp.*, 154 F. Supp. 2d 696, 701 (S.D.N.Y. 2001)).

### III. Discussion

#### A. *Dismissal for Lack of Legal Representation of Dreamduke*

As noted in my January 5 Order, because Plaintiff Reeves is not a licensed attorney, he cannot bring this action pro se on behalf of Dreamduke.  A limited liability company "may appear in federal court only through a licensed attorney." *Lattanzio v. COMTA*, 481 F.3d 137, 140 (2d Cir. 2007) (citing 28 U.S.C.A. § 1654).  Plaintiff Reeves does not raise a single applicable legal authority, let alone "controlling decisions or data that [I] overlooked," *Shrader*, 70 F.3d at 257, demonstrating that the instant case presents an exception to this rule, but nonetheless requests that I depart from the norm.  (Doc. 25, at 1.)  Therefore, I see no reason to depart from this Circuit's caselaw and reverse my dismissal of this case.  While Plaintiff Reeves argues that Dreamduke should be treated as a natural person because it resembles a sole proprietorship in that it is a single-member LLC over which he has full control, (Doc. 22, at ¶¶ 92–95), the Second Circuit does not "distinguish between limited liability companies and sole

4

member or solely-owned limited liability companies" for purposes of determining the propriety of appearances in federal court. *Lattanzio*, 481 F.3d at 140. "Unlike a sole proprietorship, a sole member limited liability company is a distinct legal entity that is separate from its owner;" as such, the *Lattanzio* court held that a "sole member of a limited liability company must bear the burdens that accompany the benefits of the corporate form." *Id*. The same reasoning applies to the instant case; Reeves must bear the burdens that accompany the benefits of Dreamduke's corporate form.

Furthermore, because all of Plaintiff Reeves's causes of action arise out actions taken in his capacity as a member and proprietor of Dreamduke, the present action is essentially one brought on Dreamduke's behalf, rather than in Plaintiff Reeves's individual capacity. Absent Plaintiff Dreamduke, Plaintiff Reeves may not proceed alone with this derivative action seeking relief for injuries sustained by Dreamduke as result of Defendants' alleged actions. *See, e.g.*, *Lattanzio*, 481 F.3d at 139 (affirming district court's dismissal of owner and director of LLC's pro se claims on the basis that since "[the pro se plaintiff] had always acted on behalf of [the LLC], which was a separate entity, [the LLC] lacked 'any personal relationship with [defendants] which gives rise to a cause of action in [the LLC's] own right'"); *Phillips v. Tobin*, 548 F.2d 408, 415 (2d Cir. 1976) (prohibiting the pro se plaintiff from proceeding with a derivative suit brought on behalf of a corporation unless "represented by a member of the bar").

Plaintiff Reeves has not stated any intention to obtain licensed counsel to represent Dreamduke. Accordingly, I affirm my earlier dismissal of this action, without prejudice to renewal after Plaintiff Reeves acquires a licensed attorney to represent Dreamduke and demonstrates good cause for his failure to do so earlier.

### B. *Stay in Favor of Arbitration*

In any case, I find that a separate ground for not permitting this case to proceed in this forum, in that Plaintiffs have not established that this action should not be stayed in favor of arbitration. Neither have Plaintiffs raised any "intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice" warranting reconsideration, despite my order directing Plaintiff Reeves to show cause regarding this deficiency. *In re Beacon Assocs. Litig.*, 818 F. Supp. 2d at 702–03.

Indeed, the Master Services Agreement ("Agreement") between Dreamduke and Safeguard states, in relevant part, that

> Contractor and Safeguard agree that arbitration shall be the exclusive, final, and binding means for resolving any dispute between Safeguard and contractor (including its Personnel) that is related to any of the subjects in this Agreement, the Services, any Work Order, any matter related to the relationship between Safeguard and Contractor, or any dealings between Safeguard and Contractor (including Contractor's Personnel) that cannot be resolved internally between the parties . . . Arbitration shall be conducted under the Commercial Dispute Resolution Rules of the American Arbitration Association ("AAA"), as amended, except as modified in this clause or by subsequent agreement of the parties. . . . The parties agree to the applicability of the Federal Arbitration Act ("FAA") and hereby waive any argument that the FAA is not applicable . . . . The arbitration shall take place in Cuyahoga County, Ohio, before a single neutral arbitrator who shall be a lawyer.

(Doc. 4-1, at 76–77, ¶ 32.) The FAA, in turn, provides that written agreements to arbitrate disputes "shall be valid, irrevocable, and enforceable," and requires a district court to stay an action to resolve a dispute subject to an arbitration agreement if a party requests as such. *Orange Cty. Choppers, Inc. v. Goen Techs. Corp.*, 374 F. Supp. 2d 372, 373 (S.D.N.Y. 2005) (citing 9 U.S.C. §§ 2, 3). In addition, "when it is apparent—on the face of the complaint and documents properly incorporated therein—that claims are subject to arbitration, a district court may dismiss in favor of arbitration without the delay of discovery." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 231 (2d Cir. 2016). Furthermore, "a broad arbitration clause creates a presumption of

6

arbitrability which can be overcome only if it may be said 'with positive assurance' that the arbitration clause is not susceptible to the interpretation that it covers the asserted dispute." *Orange Cty.*, 374 F. Supp. 2d at 374 (citing *Oldroyd v. Elmira Sav. Bank*, FSB, 134 F.3d 72, 76 (2d Cir. 1998)).  Here, the arbitration clause purports to apply to "any dispute between [the parties] that is related to any of the subjects in this Agreement, the Services" or "any matter related to the relationship between Safeguard and Contractor," making it precisely the type of sweeping clause mandating a presumption of arbitrability.  *See, e.g.*, *Collins & Aikman Prod. Co. v. Bldg. Sys., Inc.*, 58 F.3d 16, 20 (2d Cir. 1995) (holding that a clause "submitting to arbitration '[a]ny claim or controversy arising out of or relating to th[e] agreement,' is the paradigm of a broad clause").  Plaintiff Reeves does not dispute the general presumption of arbitrability mandated by the arbitration clause, but argues that the clause should not be enforced because it is unconscionable.  (Doc. 22, at ¶¶ 24, 29, 52.)

1. **Applicable Law**

"[S]tate law, whether of legislative or judicial origin, is applicable [in an FAA action] *if* that law . . . govern[s] issues concerning the validity, revocability, and enforceability of contracts generally."  *Perry v. Thomas*, 482 U.S. 483, 492 n. 9 (1987) (emphasis in original).  Here, the Agreement contains a choice-of-law and forum-selection provision that states that, except as provided in Section 32 relating to arbitration and the applicability of the Federal Arbitration Act, the Agreement "shall be governed by and construed in accordance with the laws of the State of Ohio, without regard to its conflict of law principles."  (Doc. 4-1, at 76–77, ¶ 31.)  Plaintiff Reeves avers in his letter that the arbitration clause is unconscionable under New York law, (Doc. 22, at ¶¶ 24, 29), while Defendants argue that it is unconscionable under neither New York nor Ohio law, (Doc. 23, at 2).  Defendants are correct; here, regardless of which state's law

7

education, intelligence, business acumen and experience, . . . who drafted the contract, . . . whether alterations in the printed terms were possible, [and] whether there were alternative sources of supply for the goods in question." *Taylor Bldg. Corp. of Am. v. Benfield*, 884 N.E.2d 12, 22 (Sup. Ct. Ohio 2008) (citations omitted). Factors used to assess whether a contract is substantively unconscionable include "the fairness of the terms, the charge for the service rendered, the standard in the industry, and the ability to accurately predict the extent of future liability." *Hayes v. Oakridge Home*, 122 Ohio St. 3d 63. 69 (Sup. Ct. Ohio 2009).

Under either New York or Ohio law, an assessment of the validity of an arbitration clause requires examining only the validity of the clause itself, and not the entire agreement in which it is contained. *See, e.g.*, *Prinze v. Jonas*, 38 N.Y.2d 570, 577 (1976) (stating that "even when it is alleged . . . that the contract itself is invalid in its entirety, the court's role is still confined to determining the validity of the arbitration clause alone"); *Taylor Bldg.*, 884 N.E.2d at 22 ("Because the arbitration clause is a separate entity, it only follows that an alleged failure of the contract in which it is contained does not affect the provision itself.") (citing *ABM Farms, Inc. v. Woods*, 692 N.E.2d 574, 574). As such, a party challenging an arbitration provision as unconscionable "must show that the arbitration clause itself is unconscionable." *Taylor Bldg.*, 884 N.E.2d at 22. My inquiry today is accordingly limited to assessing the alleged unconscionability of the arbitration clause.[3]

### 2. Application

Plaintiff Reeves sets forth several allegations as support for his argument that the

---

[3] While Plaintiff Reeves questions the applicability of the arbitration provision on the basis that the Agreement "never ever took place, and no transaction was completed," and that the other provisions in the Agreement are unconscionable, (Doc. 22, at ¶¶ 19, 26), these arguments are inapplicable to my determination of the enforceability of the arbitration clause and are best reserved for the arbitrators, *see Prinze v. Jonas*, 38 N.Y.2d at 577 ("If the arbitration agreement is valid, any controversy as to the validity of the contract as a whole passes to the arbitrators.").

9

arbitration clause is unconscionable.  Although Plaintiff Reeves admits that he signed the Agreement, (Doc. 22, at ¶ 56), he claims that he was induced by "false promises" of "lucrative work orders and high pay rates" that were in fact below the market rates offered for similar contracting services, (*id*. ¶¶ 58–60).  Plaintiff argues that the fact that he signed the agreement does not establish that he accepted the arbitration provisions "because a reasonable person would not understand that he was so binding himself by signing." (*Id*. ¶ 56.)  Plaintiff Reeves further alleges that there was unequal bargaining power between himself and Defendant Safeguard, due to the fact that he was "unrepresented, uneducated, needy, and had no opportunity to change some of the provisions of the agreement terms or even state a grievance," while Safeguard, on the other hand, "shared a personal relationship with powerful major lenders." (*Id*. ¶¶ 75, 77–78.) Plaintiff Reeves alleges that, under the circumstances, "[t]his was a take-it-or-leave-it [] offer." (*Id*. ¶ 75.)  Plaintiff also argues that arbitration will not be fair for Dreamduke "because it will only address a small portion of Dreamduke's losses and not the totality of the losses," (*id*. ¶ 57), and further speculates that an arbitration hearing in Ohio would present a disadvantage, in that the arbitrators would likely be more sympathetic to Safeguard, a local taxpaying business in Ohio, than Plaintiff, who is from out of state, (*id*. at 14).

      Plaintiff Reeves does not establish procedural unconscionability under either New York or Ohio law.  Although Plaintiff makes the conclusory statement that Defendants used "high pressure tactics" to get him to sign the Agreement, (*id*. ¶ 58), he does not allege sufficient facts showing that the circumstances surrounding the contracting parties' bargaining created a lack of meaningful choice in support of this claim.  Plaintiff does not suggest, for instance, that he was not given sufficient time to read the Agreement or prevented from consulting an attorney before signing it.  Nor does he allege that the terms of the arbitration agreement were obscured or less

legible than the rest of the Agreement. *See, e.g.*, *Taylor Bldg.*, 884 N.E.2d at 23 (holding an arbitration clause valid where there was no evidence that the signatories "were hurried through [the] signature process" and the clause "appeared in standard, rather than fine, print and was not hidden"); *Morris v. Snappy Car Rental, Inc.*, 84 N.Y.2d 21, 30 (Ct. App. N.Y. 1994) (holding a clause valid where the plaintiff was not prevented from reading the agreement or asking that its contents be explained to her by one of the defendant's representatives and signed her name immediately beneath "clear and legible" provisions). From my review of the arbitration agreement, it appears here that the clauses articulating the binding nature of the arbitration agreement are set off in bold print. (Doc. 4-1, at 76–77, ¶ 32.) Without more, Plaintiff Reeves's claim that Dreamduke had less clout than Safeguard as a smaller contractor is insufficient to prove that the arbitration agreement was procedurally unconscionable. *See Taylor Bldg.*, 884 N.E.2d at 23 ("[I]nequality of bargaining power alone is insufficient to invalidate an otherwise enforceable arbitration contract."); *Morris*, 84 N.Y.2d at 30 (stating that a claim that an agreement "is void and unenforceable because it was part of an adhesion contract or the result of procedural unconscionability" must be judged "by whether the party seeking to enforce the contract has used high pressure tactics or deceptive language in the contract and whether there is inequality of bargaining power between the parties"); *Neubrander v. Dean Witter Reynolds, Inc.*, 81 Ohio App. 3d 308 (Ct. App. Ohio 1992) (the "constitutionality of an arbitration is not compromised by the fact that one party is required to submit to it as a condition for entering a specific activity") (internal citations omitted).

Absent any showing of procedural unconscionability, Plaintiff Reeves may not feign ignorance of the existence of the arbitration clause. *See Level Export Corp. v. Wolz, Aiken & Co.*, 305 N.Y. 82, 87–88 (Ct. App. N.Y. 1953) (holding that a signatory to an arbitration contract

cannot avoid arbitration of a dispute encompassed by a valid arbitration clause contained in a binding contract by claiming that he was unaware of or never read the arbitration provision). Here, Plaintiff Reeves not only signed the Agreement as the owner of Dreamduke, but also initialed each page, including the pages containing the arbitration provision. (Doc. 4-1, at 76–77.) He is consequently bound by the terms of the contract he signed. *See Level Exp. Corp.*, 305 N.Y. 82 at 87 ("He who signs or accepts a written contract, in the absence of fraud or other wrongful act on the part of another contracting party, is conclusively presumed to know its contents and to assent to them, and there can be no evidence for the jury as to his understanding of its terms.") (citing *Metzger v. AEtna Ins. Co.*, 227 N.Y. 411, 416 (Ct. App. N.Y. 1920)); *Vincent v. Neyer*, 139 Ohio App. 3d 848, 855 (Ct. App. Ohio 2000) (enforcing arbitration clause notwithstanding the appellants' failure to read the entire contract).

As Plaintiff Reeves has not shown that the arbitration clause here is unenforceable as a result of procedural unconscionability, I find that this action is not properly before me and would have stayed this matter in favor of arbitration had it not been dismissed for failure to prosecute.[4]

---

[4] Because Plaintiff Reeves's failure to show procedural unconscionability is alone fatal to his claim, I need not decide today whether the clause was also substantively unconscionable. However, I note that Plaintiff's claim that arbitration in Ohio would be prima facie discriminatory against out-of-state parties is speculative at best and, in any event, Plaintiff's characterization of Dreamduke as a foreign "business from New York," (Doc. 22, at 14), is somewhat undercut by the record evidence that Dreamduke is incorporated in Ohio, (Doc. 4-1, at 6). Moreover, such general and conjectural claims of unfairness arising from the mere notion of arbitration are insufficient to establish a claim that the arbitration clause is substantively unconscionable. *See, e.g.*, *Hayes*, 122 Ohio St. 3d at 71 ("The waiver of the right to a jury trial is a necessary consequence of agreeing to arbitration and is not unconscionable."); *Matter of Ball (SFX Broad. Inc.)*, 236 A.D.2d 158, 161 (1997) (holding that no substantive unfairness existed where the petitioner was "not precluded from pursuing her claims and obtaining full compensation for her damages in the arbitral forum").

### IV. **Conclusion**

For the foregoing reasons, Plaintiff Reeves's motion for reconsideration is DENIED. It is hereby:

ORDERED that The Clerk of Court is respectfully directed to terminate the open motion at Document 15.

IT IS FURTHER ORDERED that this matter remain closed consistent with my Order on August 18, 2020, dismissing the case due to Plaintiffs' failure to prosecute this case.

IT IS FURTHER ORDERED that should the parties arbitrate this matter that they inform me within two weeks of the results of that arbitration.

The Clerk of Court is also respectfully directed to mail a copy of this Opinion & Order to pro se Plaintiff.

SO ORDERED.

Dated: June 10, 2021
    New York, New York

*Vernon Broderick*
Vernon S. Broderick
United States District Judge